IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| GREGORY K. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06-0142-CV-W-NKL-SSA |
| ) | |
| JO ANNE BARNHART, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |
| ) | |

ORDER

Pending before the Court is Plaintiff Gregory K. Smith's Motion for Summary Judgment [Doc. # 7]. Smith seeks judicial review of the Commissioner's denial of his requests for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401, et seq. The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1] Because the Court finds that the Administrative Law Judge's decision is supported by substantial evidence in the record as a whole, the Court affirms the ALJ's decision.

**I.      Background**

---

[1] Upon review of the record and the law, the Court finds the Defendant's position persuasive. Portions of the Defendant's brief are adopted without quotation designated.

1

Plaintiff, 51 years old at the date of his administrative hearing, filed an application with the Social Security Administration on February 19, 2003, alleging disability due to scapulacostal syndrome of both shoulders, arthritis of the neck as a result of C-6 fracture, and degenerative disk disease of the neck (Tr. 194). Between the alleged onset date of August 9, 2002 and the November 9, 2004 hearing before the ALJ, a period of 27 months, Plaintiff sought treatment from medical professionals on a total of 106 days, occasionally seeing multiple providers on the same day.  Of particular note are evaluations by Drs. Gall, Younger, Trout, Owens, Pro, and Pomerantz.

Clifford M. Gall, M.D., examined Plaintiff on September 20, 2002.  (Tr. 474-75.) Dr. Gall stated, "I must say I'm not exactly sure what is causing this patient's symptoms." (Tr. 475.)  In a note dated October 4, 2002, Dr. Gall stated that although Plaintiff complained of pain in his neck and arms and weakness in his arms, the films of Plaintiff's neck showed some mild arthritic changes but no other abnormality.  (Tr. 658.)  Dr. Gall stated that the MRI of the cervical spine showed only a narrowing of the C5/C6 disk space, no disk herniation or fracture or misalignment or narrowing of the spinal canal. (Tr. 658.)  Dr. Gall stated that he could not find an anatomic cause for Plaintiff's symptoms.  (Tr. 658.)

Stacy Younger, M.D., one of Plaintiff's treating physicians, examined Plaintiff on October 17, 2002.  (Tr. 519-21.)  Dr. Younger noted that Plaintiff had good insight and judgment, and an appropriate affect.  (Tr. 520.)  Dr. Younger noted that Plaintiff's muscle tone and strength were symmetrical and age appropriate.  (Tr. 520.)  Plaintiff had a

2

Case 4:06-cv-00142-NKL   Document 12   Filed 10/03/06   Page 2 of 11

postural hand tremor, but normal upper and lower limb coordination and a normal gait. (Tr. 520.) During another evaluation on June 30, 2003, Dr. Younger noted in her History notes that "[Smith] recently saw a physician for a disability evaluation and it was recommended that he receive full disability due to physical and psychological issues. At this point, I agree with that assessment." (Tr. 483.) She also noted that "He has been doing a lot more yard work lately and that may be increasing his pain." (Tr. 483.) Dr. Younger examined Plaintiff again on December 12, 2003. (Tr. 635-36.) Dr. Younger noted that Plaintiff had a normal orientation, memory, attention span and concentration, language, and fund of knowledge. (Tr. 636.) Motor examination showed full and symmetrical muscle strength, tone, and size throughout upper and lower extremities. (Tr. 636.)

Robert W. Trout, M.D., conducted an electrodiagnostic evaluation of Plaintiff on April 24, 2003. (Tr. 489-90.) Dr. Trout noted normal nerve conduction studies and electromyographic findings. (Tr. 490.) Dr. Trout noted no electromyographic evidence of radiculopathy, plexopathy, myopathy or peripheral neuropathy. (Tr. 490.)

Dennis P. Owens, M.D., filled out a Mental Impairment Evaluation form on September 11, 2003, finding that Smith met Mental Impairment Listing 12.04 and 12.06. (Tr. 794-97.) There are no notes included in the form to indicate the basis for the opinion.

John D. Pro, M.D., examined Plaintiff on October 2, 2003. (Tr. 787-93.) Dr. Pro stated that considering Plaintiff's psychological dysfunction alone, he probably could work at a low stress job. (Tr. 792.) Dr. Pro stated that considering both Plaintiff's mental

3

and physical complaints, Plaintiff was permanently and totally disabled as defined by Missouri law. (Tr. 792.) Dr. Pro assessed a global assessment of functioning (GAF) of 55. (Tr. 793.)

During an administrative hearing on November 9, 2004, the ALJ heard testimony from Plaintiff, Medical Expert Dr. Pomerantz, and Vocational Expert Amy Salva. Dr. Pomerantz testified that Plaintiff had mild limitations in his daily activities and social functioning resulting from his depressive symptoms. (Tr. 35.) Dr. Pomerantz noted that Plaintiff's pain symptoms seemed to be exaggerated. (Tr. 35.) Dr. Pomerantz testified that Plaintiff's condition did not meet or equal any listing. (Tr. 35-36.) Dr. Pomerantz stated that a report submitted by Plaintiff's attorney dated September 11, 2003, which indicated that Plaintiff had marked limitation in his activities of daily living, social functioning, concentration, and extreme episodes of decompensation, was not supported by the record. (Tr. 37.) Dr. Pomerantz stated that Plaintiff had the ability to do even skilled work. (Tr. 38.) Dr. Pomerantz stated that Plaintiff's pain complaints seemed to be out of proportion to the actual physical findings. (Tr. 39.)

VE Silva testified during the hearing that Plaintiff could perform simple, sedentary work and that such jobs existed in sufficient numbers within the state of Missouri. The ALJ asked the VE, "If the individual would have difficulty maintaining a work schedule to the extent that he might miss two or three or more days of work per month because of any combination or problems physical and mental, what about that?" The VE responded, "He would not be able to maintain any employment." (Tr. 63.)

4

**II.     Discussion**

To establish entitlement to benefits, Plaintiff must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months.  42 U.S.C. § 423(d)(1)(A).

After consideration of the evidence of record, the ALJ found that Plaintiff had a history of a compression fracture at C6 of the cervical spine, scapulacostal syndrome of the shoulder, degenerative cervical disc disease of the spine and mild bilateral C6 radiculopathy, and an affective disorder.  (Tr. 28.)  The ALJ found, however, that Plaintiff did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. § 404, Subpart P, Appendix 1, Regulation No. 4.  (Tr. 28.)  The ALJ found that although Plaintiff's impairments would preclude him from performing his past work, they would not preclude him from performing work existing in significant numbers.  (Tr. 28-29.)  Consequently, the ALJ found Plaintiff was not disabled.  Substantial evidence supports that finding.

**A.     The ALJ Properly Considered all the Credible Evidence of Record In Determining Plaintiff's RFC.**

The ALJ specifically found that Plaintiff's subjective complaints were not totally credible.  (Tr. 28.)  His consideration of the subjective aspects of Plaintiff's complaints comported with the regulations at 20 C.F.R. § 404.1529 (2006), and the framework set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984).  If an ALJ explicitly discredits a claimant's testimony and gives good reasons for doing so, the court will normally defer

5

to the ALJ's credibility determination. *See Russell v. Sullivan*, 950 F.2d 542, 545 (8th Cir. 1991) (citing *Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990)).

The ALJ found that the objective medical evidence showed, at most, mild limitations. (Tr. 25.) Dr. Gall stated that he could not find an anatomic cause for Plaintiff's symptoms. (Tr. 658.) An MRI of the cervical spine showed only a narrowing of the C5/C6 disk space, no disk herniation or fracture or misalignment or narrowing of the spinal canal. (Tr. 658.) Dr. Younger noted that Plaintiff's muscle tone and strength were symmetrical and age appropriate. (Tr. 520.) Dr. Trout noted normal nerve conduction studies and electromyographic findings. (Tr. 490.) Dr. Trout further found no electromyographic evidence of radiculopathy, plexopathy, myopathy or peripheral neuropathy. (Tr. 490.) An ALJ may not discount allegations of disabling pain solely on the lack of objective medical evidence, but a lack of objective medical evidence is a factor an ALJ may consider in determining a claimant's credibility. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (citing *Tennant v. Apfel*, 224 F.3d 869, 871 (8th Cir. 2000)).

Plaintiff relies on Dr. Owens' opinion that Plaintiff had very severe mental impairments that met the listings at 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.06. (Tr. 794-97.) In order for a claimant to show that his/her impairment matches a listing, the impairment must meet all specified medical criteria. *See Deckard v. Apfel*, 213 F.3d 996, 997 (8th Cir. 2000) (citing *Marciniak v. Shalala*, 49 F.3d 1350 (8th Cir. 1995)). The Eighth Circuit has stated that "[a]lthough it is preferable that ALJs address a specific

6

listing, failure to do so is not reversible error if the record supports the overall conclusion, as it does in this case." *Pepper o/b/o Gardner v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003). "The burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing." *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). In this case Plaintiff did not meet that burden.

Dr. Owens' assessment of listing-level, disabling mental impairments was inconsistent with the balance of the record, including Dr. Younger's observations of Plaintiff's mental status. (Tr. 636.) Dr. Pro stated that Plaintiff's psychological dysfunction would not prevent him from working at a low stress job. (Tr. 792.) Dr. Pomerantz testified that Plaintiff did not have limitations that met or equaled any listing. (Tr. 24, 34-38.) Thus, substantial evidence supports the ALJ's finding that Plaintiff did not meet his burden that he met or equaled any listing.

Drs. Owens' and Younger's opinions, relied on by the Plaintiff, were necessarily based on Plaintiff's subjective complaints. The Eighth Circuit has held that an ALJ is justified in discrediting the opinion of a physician when it was based solely on the claimant's subjective complaints and is not supported by his other findings. *See Woolf v. Shalala*, 3 F.3d 1210, 1214 (8th Cir. 1993). In this case the ALJ could reasonably rely on Dr. Pomerantz's opinion, the objective medical tests of Drs. Trout and Gall, and even Dr. Younger's own observations noted in Plaintiff's treatment records. "Where other medical assessments are supported by better or more thorough medical evidence," an ALJ may "discount or even disregard the opinion of a treating physician." *See Cantrell v. Apfel*,

231 F.3d 1104, 1107 (8th Cir. 2000) (citations and internal punctuation omitted). If there is a reasoned basis for doing so, "[i]t is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) (citing *Jenkins v. Chater*, 76 F.3d 231, 233 (8th Cir. 1996).

The ALJ also noted that Plaintiff receives a large monthly retirement check from the state of Missouri. (Tr. 26, 51.) The Eighth Circuit has held that an ALJ may discount a claimant's subjective complaints for, among other reasons, that he appeared to be motivated to qualify for disability benefits. *See Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004) ("[T]he ALJ found that Eichelberger had objectively determinable impairments, but also noted that her incentive to work might be inhibited by her long-term disability check of $1,700 per month.").

Although Plaintiff testified to limited daily activities, the record indicated that Plaintiff was not so limited. The ALJ noted that in June 2003, Plaintiff had aggravated his shoulder doing yard work, which represents a level of activity inconsistent with Plaintiff's alleged disability and consistent with performing some light and sedentary work. (Tr. 25, 483.) The Eighth Circuit has noted that activities which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility. *See Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001).

The ALJ formulated Plaintiff's residual functional capacity based on his credibility findings. The Eighth Circuit has held that residual functional capacity is a determination based upon all the record evidence. *See Pearsall v. Massanari*, 274 F.3d 1211,

1217-1218 (8th Cir. 2001) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); *Dykes v. Apfel*, 223 F.3d 865, 866-67 (8th Cir. 2000) (citing 20 C.F.R. § 404.1545; SSR 96-8p at pp. 8-9).   In this case, the ALJ found that Plaintiff had the residual functional capacity to perform simple, routine, repetitive, unskilled sedentary work. (Tr. 28.) From a physical perspective, these residual functional capacity findings were strongly supported by the reports of Drs. Gall and Trout, and the objective medical evidence which consistently showed, at most, mild physical abnormalities. (Tr. 25.) Regarding Plaintiff's mental complaints, there was substantial evidence in the record to support the ALJ's conclusion that Plaintiff was not disabled within the meaning of social security regulations. Dr. Younger observed that Plaintiff had good insight and judgment, and an appropriate affect, and Dr. Pro stated that from the perspective of Plaintiff's psychological dysfunction alone, he probably could work at a low stress job.[2] (Tr. 520, 792.) The ALJ's overall residual functional capacity findings were also supported by the testimony of Dr. Pomerantz. (Tr. 34-38.) Dr. Pomerantz stated that Plaintiff had the ability to do even skilled work. (Tr. 38.)

  The ALJ discounted the opinions of the Plaintiff's treating physician to the extent they were not supported by the objective record. This is permissible under Eighth Circuit law and the ALJ's finding is supported by substantial evidence.

---

[2] Dr. Pro opined that Plaintiff was permanently and totally disabled as defined by Missouri law. (Tr. 792.) A disability determination using the rules of another governmental agency is not binding on the Commissioner. *See* 20 C.F.R. § 404.1504.

9

### B. The ALJ Properly Relied on the Vocational Expert to Determine that Plaintiff Was Able to Perform Other Work Existing in Substantial Numbers.

The testimony of the vocational expert supported the ALJ's determination that Plaintiff was not disabled. Asked a hypothetical question which set forth Plaintiff's limitations in a manner consistent with the ALJ's eventual findings concerning Plaintiff's condition and functional limitations, the vocational expert testified that while Plaintiff could not perform his past relevant work, Plaintiff could perform a range of sedentary work existing in significant numbers in the local and national economies, including assembler, surveillance system monitor, and administrative support person. (Tr. 61-62.) The ALJ was not required to include in the hypothetical question facts which the ALJ did not believe.

Finally, Plaintiff argues that he must be disabled because he goes to the doctor so frequently that he could not work. If frequent trips to the doctor was sufficient to establish disability, then any claimant would have control over the determination of a disability. The relevant question is not whether the claimant goes to the doctor frequently. The relevant question is whether the claimant has shown that he must go to the doctor so frequently during working hours. Considering the ALJ's opinion in its entirety, it is clear that the ALJ did not conclude that such trips were needed. That conclusion is well supported in the record.

### III. Conclusion

Accordingly, it is hereby

ORDERED that Plaintiff's Motion for Summary Judgment [Doc. # 7] is DENIED.

The Decision of the ALJ is AFFIRMED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: October 3, 2006
Jefferson City, Missouri